# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA DEPARTMENT OF TOXIC SUBSTANCES CONTROL, <br><br> vs. <br><br> CALIFORNIA-FRESNO INVESTMENT COMPANY, <br><br> Defendant. _____/ | CASE NO. CV F 06-0488 LJO SMS <br><br> **DECISION ON DEFENDANT'S SUMMARY JUDGMENT MOTION** <br> (Doc. 18.) |

## INTRODUCTION

Defendant California-Fresno Investment Company dba California-Fresno Oil Co. ("Fresno Oil")[1] seeks summary judgment on plaintiff California Department of Toxic Substances Control ("DTSC") claims for hazardous substances clean up costs on grounds that Fresno Oil is not a liable, responsible party for such costs. DTSC contends that Fresno Oil is responsible for the clean up costs as a corporate successor which assumed such liabilities. This Court considered Fresno Oil's summary judgment motion on the record and VACATES the May 14, 2007 hearing, pursuant to this Court's Local Rule 78-230(h). For the reasons discussed below, this Court GRANTS Fresno Oil summary judgment.

---

[1] Fresno Oil is a California corporation.

1

**BACKGROUND**

**Early Corporate Histories And Property Ownership**

California-Fresno Oil Company was incorporated in 1901, and its business included production, transport and commercial exchange of petroleum and petroleum products, real estate dealing, and borrowing and lending money. In 1946, California-Fresno Oil Company changed its name to California-Fresno Investment Co ("CFI").

California-Fresno Oil Company/CFI owned 2518 South Railroad Avenue ("Railroad property") in Fresno when hazardous substances were disposed of or released on Railroad property during 1939-1964. During that time, California-Fresno Oil Company/CFI leased a portion of the Railroad property to Vendorlator Manufacturing Company.

As of 1976, CFI operated an oil division, which conducted oil-related operations, and an investment division, which conducted real estate dealings. According to CFI records, the investment division comprised land and buildings which CFI leased to others, including the oil division. CFI records further note that the investment division's income was primarily from rentals, and the oil division's income was primarily from petroleum product sales. Dolph W. Ruschhaupt ("Mr. Ruschhaupt"), a CFI director and shareholder, managed the oil division's day-to-day operations.

**Fresno Oil's Formation**

As DTSC notes, CFI restructured due to a disagreement among directors and shareholders over its future. In 1976, Mr. Ruschhaupt desired to expand CFI to build new facilities and to grow the oil division's operation. A majority of CFI's board of directors disagreed. A proposal was made to: (1) create a new corporation as a subsidiary to receive assets of the oil division and all assets and liabilities of the investment division, except the Railroad property; (2) retain the Railroad property with CFI, the parent corporation; and (3) distribute the new corporation to Mr. Ruschhaupt. At a July 21, 1976 special meeting, CFI's shareholders agreed to change CFI's name to California-Fresno Realty Company ("Realty"). The shareholders also voted to create a new subsidiary and to distribute the subsidiary's stock to Mr. Ruschhaupt in exchange for his CFI/Realty shares.

By an August 2, 1976 agreement, Realty's shareholders agreed to incorporate subsidiary

/ / /

Fresno Oil[2] and transfer to Fresno Oil all Realty assets and liabilities, except the Railroad property. The Realty shareholders further agreed to distribute to Mr. Ruschhaupt all of Realty's stock in new subsidiary Fresno Oil in exchange for Mr. Ruschhaupt's 1,883 shares of Realty stock, valued at $6.5825 per share as of July 21, 1976. The value of the assets transferred to Fresno Oil was $147,494.08. To justify issuance to him of all shares of newly formed Fresno Oil, Realty required Mr. Ruschhaupt to acquire 22,407 Realty shares to be redeemed by Realty in exchange for all Fresno Oil stock issued to Mr. Ruschhaupt. Mr. Ruschhaupt agreed to purchase 20,524 Realty shares from other shareholders at $135,099.08 over 15 years. Mr. Ruschhaupt's previously owned 1,883 Realty shares plus the 20,524 shares he agreed to purchased amounted to 22,407 shares.

By an August 17, 1976 bill of sale, Realty transferred to Fresno Oil all "right, title and interest in and to all of the assets and liabilities of California-Fresno Realty Company, as such assets and liabilities are reflected in the balance sheet set forth as Exhibit 'A' attached [to the bill of sale], such balance sheet reflecting all of the assets and liabilities of California-Fresno Realty Company other than the [Railroad] real property." On Realty's pro forma balance sheet as July 30, 1976 and submitted to the California Department of Corporations, Realty listed its liabilities as "none." In August and September 1976, all 11,203.5 Fresno Oil shares were issued to Realty and in turn sold, assigned and transferred to Mr. Ruschhaupt, Fresno Oil's sole shareholder and president. None of Realty's other shareholders or directors acquired Fresno Oil stock.[3]

Fresno Oil notes that although it was created as a subsidiary, it did not operate as such in that shortly after its formation, its stock was transferred to Mr. Ruschhaupt, and Fresno Oil was spun off from Realty, which retained the Railroad property and continued the real estate dealings of CFI's investment division. Realty leased to Fresno Oil the bulk plant, service station and a building at the

---

[2] DTSC explains that the primary reason to give Fresno Oil the old California-Fresno Investment Company name was to satisfy Mr. Ruschhaupt's desire for its goodwill.

[3] DTSC summarizes the August and September 1976 transactions: CFI (1) changed its name to California-Fresno Realty Company; (2) created a 100-percent owned subsidiary Fresno Oil; (3) contributed all of its assets and liabilities, except the Railroad property, to Fresno Oil; and (4) sold 100 percent of the Fresno Oil's shares to Mr. Ruschhaupt in exchange for his CFI/Realty shares. The parties appear to agree that the series of transactions constitute a "split off," which DTSC notes is a corporation's distribution of stock of an existing or newly created subsidiary to one or more shareholders of the distributing corporation where the shareholders surrender stock of the distributing corporation in exchange for the distributed subsidiary's stock.

3

Railroad property for up to five years, beginning in 1976.  DTSC points out that Fresno Oil continued the oil business operations of CFI's oil division and that Mr. Ruschhaupt oversaw Fresno Oil's operations, which were the same operations he had overseen with CFI.

### **Peabody Floway's Acquisition Of Realty**

In December 1976, Peabody Floway Corporation ("Peabody Floway"), a wholly owned subsidiary of Peabody Galion Corporation ("Peabody Galion"), acquired Realty in a stock swap to acquire the Railroad Property.  As of November 1, 1976, Realty's stock was valued at $450,000.  Peabody Floway acquired Realty's stock for $450,000 payable in Peabody Galion's stock as part of a merger of Peabody Floway and Realty to permit Peabody Floway to acquire the Railroad property.  Fresno Oil agreed to terminate, and terminated, as of January 1, 1978 its lease of the Railroad property.  In 1979, Realty merged into survivor Peabody Floway.

### **DTSC's Findings And Claims**

In pursuit of its claims against Fresno Oil, DTSC found:

1. Realty's shareholders reincorporated as Fresno Oil, leased a portion of the Railroad property during 1976-1982, and conducted retail operation at the Railroad property; and
2. Fresno Oil is a successor to Realty and CFI, the owner and operator of the Railroad property and lessor of a portion of the Railroad property to Vendorlator Manufacturing Company when hazardous substances were released at the Railroad property.

Fresno Oil disputes that Realty reincorporated as Fresno Oil because Mr. Ruschhaupt was Fresno Oil's sole shareholder.  Fresno Oil further disputes that it is CFI's successor to hold Fresno Oil jointly and severally liable for cleanup costs.

DTSC proceeds on its Complaint for Recovery of Response Costs; Declaratory Relief; Injunctive Relief; Penalties; Punitive Damages ("complaint").  The complaint alleges first and second causes of action under the Comprehensive Environmental Response Compensation and Liability Act ("CERCLA"), 42 U.S.C. §§9607(a)(2) and 9613(g)(2), to recover DTSC's costs to address release of hazardous substances at the Railroad property and for declaratory relief that Fresno Oil is jointly and severally liable for DTSC's future costs.  The complaint's third cause of action seeks injunctive relief under California Health & Safety Code section 58009 to abate a public nuisance of hazardous

substances. The complaint's fourth cause of action seeks injunctive relief under California Health & Safety Code section 25358.3 to require Fresno Oil to respond to and abate release of hazardous substances at the Railroad property. The complaint's fifth cause of action seeks injunctive relief under California Health & Safety Code § 25358.3 to require Fresno Oil to comply with DTSC Imminent and Substantial Endangerment Determination and Remedial Action orders ("remedial action orders"). The complaint's sixth cause of action seeks treble damages under California Health & Safety Code § 25359 for Fresno Oil's failure to take removal or remedial actions to comply with DTSC's remedial action orders. The complaint's seventh cause of action seeks civil penalties under California Health & Safety Code § 25359.2 for Fresno Oil's failure to comply with DTSC's remedial action orders.

Fresno Oil seeks summary judgment on grounds that it was not the owner or operator of the Railroad property when hazardous substances were disposed and is not the corporate successor to such owner or operator. DTSC "acknowledges" that its claims' "viability" hinge on "a legal conclusion" that Fresno Oil is CFI's corporate successor. To that end, the parties have stipulated to undisputed material facts to obviate genuine issues of material fact. As noted by DTSC, Fresno Oil's summary judgment motion requires determination of a legal question, not whether genuine issues of material fact exist.

## DISCUSSION

### Summary Judgment Standards

F.R.Civ.P. 56(b) permits a party against whom a claim is asserted to seek "summary judgment in the party's favor upon all or any part thereof." Summary judgment is appropriate when there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. F.R.Civ.P. 56(e); *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356 (1986); *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The purpose of summary judgment/adjudication is to "pierce the pleadings and assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec.,* 475 U.S. at 586, n. 11, 106 S.Ct. 1348; *International Union of Bricklayers v. Martin Jaska, Inc.*, 752 F.2d 1401, 1405 (9th Cir. 1985).

As discussed below, in the absence of genuine factual issues, the evidence demonstrates that Fresno Oil is not subject to liability for DTSC's claims as a corporate successor or otherwise.

/ / /

**Corporate Successor Liability Under CERCLA**

CERCLA was enacted in 1980 to provide effective responses to health and environmental threats posed by hazardous waste sites. *United States v. Burlington Northern & Santa Fe Ry. Co.*, 479 F.3d 1113, 1124 (9th Cir. 2007). A key CERCLA purpose is to shift "the cost of cleaning up environmental harm from the taxpayers to the parties who benefitted from the disposal of the wastes that caused the harm." *EPA v. Sequa Corp. (In the Matter of Bell Petroleum Servs., Inc.)*, 3 F.3d 889, 897 (5th Cir. 1993). CERCLA is a "super-strict" liability statute. *Burlington Northern*, 479 F.3d at 1124. "[L]iability is joint and several when the harm is indivisible." *Burlington Northern*, 479 F.3d at 1125.

DTSC contends that Fresno Oil's liability rests on its status as successor to CFI, owner and operator of the Railroad property when hazardous substances were released. Fresno Oil argues that DTSC's first and second CERCLA causes of action fail in that Fresno Oil was not an owner or operator of a facility where hazardous substances were disposed and is not the corporate successor to such owner or operator.

"[T]he 'federal common law' rules of successor liability under CERCLA in this [Ninth] circuit mirror the traditional successor liability of most states, including California." *Atchison, Topeka and Santa Fe Ry. v. Brown & Bryant, Inc.*, 159 F.3d 358, 362 (9th Cir. 1997) CERCLA authorizes successor liability, and asset purchasers are not liable as successor corporations unless:

1. The purchasing corporation expressly or impliedly agrees to assume liability;
2. The transaction amounts to a "de facto" consolidation or merger;
3. The purchasing corporation is a mere continuation of the selling corporation; or
4. The transaction was fraudulent to escape liability.

*Brown & Bryant*, 159 F.3d at 361; *Louisiana-Pacific Corp. v. Asarco, Inc.*, 909 F.2d 1260, 1263 (9th Cir. 1990), *overruled on other grounds in Brown & Byrant*, 159 F.3d 358, 362 (9th Cir. 1997).

Fresno Oil argues that none of the successor liability exceptions apply to Fresno Oil's purchase of Realty's assets. DTSC "focuses" on the (first) assumed liability and (third) mere continuation tests.

*Assumption Of CERCLA Liability*

Fresno Oil notes that a CERCLA defendant neither expressly nor impliedly agrees to assume liabilities when an agreement "specifically defines and limits the assumed liabilities, and environmental

liabilities are not included." *See Ferguson v. Arcata Redwood Company, LLC*, 2004 U.S.Dist. LEXIS 23613 (N.D. Cal. 2004), at *12 (no CERCLA liability where agreement "expressly defined the assumed liabilities"). Fresno Oil points out that it agreed to assume only liabilities reflected in the balance sheet attached as an exhibit to the bill of sale and that the balance sheet lacks mention of environmental, miscellaneous or contingent liabilities. Fresno Oil argues that under the circumstances, the parties did not intend "to transfer the 'hidden' CERCLA liability."

As this Court has observed, "CERCLA liability can be assumed by a pre-CERCLA agreement so long as the agreement contains 'language broad enough to allow us to say that the parties intended to transfer either contingent environmental liability, or all liability.'" *United States v. Iron Mountain Mines, Inc.*, 987 F.Supp. 1233, 1241 (E.D. Cal. 1997) quoting *John S. Boyd Co., Inc. v. Boston Gas Co.*, 992 F.2d 401, 406 (1st Cir. 1993)). Fresno Oil argues that its pre-CERCLA asset transfer agreement is limited to less than "all liabilities," "exempted" the Railroad property, and is not broad enough to assume CERCLA liability in that Fresno Oil assumed assets and liabilities limited to Realty's balance sheet.

DTSC responds that due to the split off to create Fresno Oil, Fresno Oil assumed all of CFI's liabilities, including "hidden" CERCLA liability "for releases of hazardous substances that occurred during the pre-split-off corporation's ownership of the Railroad Avenue Property." DTSC explains that during the 1976 transactions, CFI directors and shareholders neither could have been aware of nor explicitly distributed CERCLA liability in that CERCLA was not enacted until 1980. DTSC relies on entry of no liabilities on Realty's pro forma balance sheet as of July 30, 1976 and submitted to the California Department of Corporations. DTSC further points to the transfer to Fresno Oil of Realty's "right, title and interest in and to all of the assets and liabilities," except the Railroad property, which Realty retained. According to DTSC, all of Realty's assets, except the Railroad property, and liabilities "before the split off, whether known or unknown" were transferred to Fresno Oil leaving "the parent [Realty] with no assets other than the [Railroad] property, and no liabilities." DTSC concludes that "had the parties intended to exempt unknown, hidden or future liabilities from the transfer of 'all liabilities,' they could have done so" to impose on Fresno Oil "yet-to-be-created CERCLA liability."

The parties point to no clearly defined agreement between Fresno Oil and Realty to impose

7

CERCLA liability on Fresno Oil. The only tangible "agreement" at issue between Fresno Oil and Realty is the August 17, 1976 bill of sale by which Realty transferred to Fresno Oil all of Realty's right, title and interest in Realty's assets, except the Railroad property, and liabilities as reflected in an attached balance sheet. The balance sheet reflects liabilities of $744,837.29, comprising current liabilities (accounts payable, accrued expenses, notes payable and accrued taxes), long term debt and stockholders' equity. The bill of sale is silent as to any liability associated with the Railroad property, which Realty specifically retained. Realty's pro forma balance sheet as of July 30, 1976 is not particularly helpful to DTSC in that it is not an agreement between Fresno Oil and Realty. At the end of the day, the bill of sale is the best evidence of an agreement but lacks language broad enough to indicate that Fresno Oil and Realty intended to transfer either contingent environmental liability or all liability associated with ownership and operation of the Railroad property. The evidence does not demonstrate that Fresno Oil agreed to assume CERCLA liability, which were unknown and did not exist at the time of events at issue.

### *De Facto Merger*

Fresno Oil challenges that the transactions at issue resulted in de facto merger. DTSC appears to concede the absence of a de facto merger. A de facto merger arises when:

1. There is a continuation of the enterprise of the seller in terms of continuity of management, personnel, physical location, assets, and operations;
2. There is a continuity of shareholders;
3. The seller ceases operations, liquidates, and dissolves as soon as legally and practically possible; and
4. The purchasing corporation assumes the obligations of the seller necessary for uninterrupted continuation of business operations.

*Asarco*, 909 F.2d at 1264.

California law recognizes a de facto merger when a corporation takes all of another corporation's assets without consideration that could be available to meet claims of the other's creditors or the consideration consists wholly of shares of the purchaser's stock which are promptly distributed to the seller's shareholders in conjunction with the seller's liquidation. *Ray v. Alad Corp.*, 19 Cal.3d 22, 28,

136 Cal.Rptr. 574, 578 (1977).

Fresno Oil argues that the transactions at issue fail to satisfy de facto merger criteria. Fresno Oil points out that Mr. Ruschhaupt was required to pay over 15 years to acquire 20,524 Realty shares and that such consideration "could have been utilized to meet Realty's obligations to creditors." According to Fresno Oil, the consideration was Realty (seller) stock owned by Mr. Ruschhaupt and traded for Fresno Oil stock so that "consideration did not consist wholly of shares of the purchaser's stock." Fresno Oil points out that Realty did not cease operations, liquidate or dissolve after the asset sale and that Realty, whose primary asset was the Railroad property, was acquired by Peabody Floway, which in turn acquired the Railroad property.

DTSC fails to dispute Fresno Oil's points. A de facto merger is not apparent in the absence of a meaningful dispute or evidence to support criteria for a de factor merger.

### *Mere Continuation*

DTSC construes Fresno Oil as a mere continuation of CFI's oil division. Fresno Oil disputes that it satisfies mere continuation criteria.

Imposition of CERCLA liability under the mere continuation exception requires that "after the transfer of assets, only one corporation remains, and there is an identity of stock, shareholders, and directors between the two corporations." *Ferguson*, 2004 U.S. Dist. LEXIS 23613, *13 (quoting *State of Washington v. United States*, 930 F.Supp. 474, 478 (W.D. Wash. 1996)). The mere continuation doctrine requires that the selling entity dissolve "because only one corporation may remain after the transaction." *Butler v. Adoption Media, LLC*, 2007 WL 963159, *41 (N.D. Cal. 2007). "The key element of a 'continuation' is a common identity of the officers, directors and stockholders in the selling and purchasing corporations." *Leannais v. Cincinnati, Inc.*, 565 F.2d 437, 440 (7th Cir. 1977); *see Tucker v. Paxson Machine Co.*, 645 F.2d 620, 625-626 (8th Cir. 1981).

Fresno Oil argues that after the 1976 assets transfer, CFI continued as renamed Realty, and Fresno Oil was created and leased buildings from Realty. As such, the one remaining corporation requirement is missing. Fresno Oil points out that Realty continued to operate independently until 1979 when it merged into Peabody Floway. Fresno Oil argues that the asset transfer lacked a continuity of stock, shareholders and directors between Realty and Fresno Oil in that only Mr. Ruschhaupt acquired

1    Fresno Oil stock by redeeming his Realty stock.  Fresno Oil further notes that only Mr. Ruschhaupt and
2    another Realty director, Adolph Ruschhaupt, succeeded to Fresno Oil's board of directors but Adolph
3    Ruschhaupt ceased as a Realty director with Peabody Floway's acquisition of Realty.
4         DTSC similarly notes that CFI's oil division was split off as Fresno Oil to permit Fresno Oil to
5    continue the oil division's operations under Mr. Ruschhaupt who became Fresno Oil's sole shareholder
6    and served on Fresno Oil's board of directors with Adolph A. Ruschhaupt.  DTSC argues that Fresno
7    Oil was formed as a CFI subsidiary "with the same business purpose for which the parent company [CFI]
8    had been formed" and received the oil division assets.  DTSC notes that Realty continued the business
9    of CFI's investment division but conducted no oil division business, which was reserved to Fresno Oil.
10        The Fresno Oil split off fails to satisfy the mere continuation criteria to impose CERCLA liability
11   on Fresno Oil.  Mr. Raushhaupt is the key common element of Fresno Oil and CFI/Realty.  With Fresno
12   Oil's creation, that commonality dwindled.  Mr. Raushhaupt divested his Realty stock to become the sole
13   Fresno oil shareholder.  There is no evidence that he continued as a Realty officer.  Fresno Oil and
14   Realty conducted different business.  The remaining commonality was that Mr. Ruschhapt and Adolph
15   Ruschhaupt served as Fresno Oil and Realty directors.  The commonality of two directors falls short of
16   the mere continuation criteria to straddle Fresno Oil for liability arising from the Railroad property
17   which Realty held and used to merge with Peabody Floway.

*** Fraudulent Transaction ***

19        Fresno Oil challenges that the transactions at issue were fraudulent.  DTSC concedes that Fresno
20   Oil was not formed to evade liability fraudulently.
21        An asset purchaser may be subject to CERCLA liability if the "transaction was fraudulently
22   entered into in order to escape liability."  *Asarco*, 909 F.2d at 1263.  "Under traditional fraudulent
23   conveyance law, the sufficiency of the consideration given for the sale also plays a large factor in
24   determining whether the sale was fraudulent."  *Brown & Bryant*, 159 F.3d at 365.  Another factor under
25   the fraudulent transaction exception is "any intent on behalf of the purchaser or seller to construct the
26   sale solely to circumvent CERCLA liability."  *Brown & Bryant*, 159 F.3d at 365.
27        Fresno Oil points to evidence of sufficient consideration to acquire Realty assets and Fresno Oil
28   shares in that Mr. Ruschhaupt was required to pay $135,099.08 for 20,524 Realty shares which Realty

redeemed with Mr. Ruschhaupt's previously owned 1,883 shares. Fresno Oil argues that the transaction could not have been structured to avoid liability under CERCLA which did not exist at the time of the 1976 transaction.

Nothing suggests the exchange of stock and assets was fraudulent.

### *Defects At Time Of Transfer*

Fresno Oil argues that it is not liable for defects existing at the time of transfer of the Railroad property. Fresno Oil points to the general rule that a land seller is able to shift responsibility for the land's condition to the purchaser unless the seller fails to disclose to the purchaser concealed conditions known to the seller and which involve an unreasonable danger to the health or safety of those on the premises and which the seller anticipates the purchaser will not discover. *Felburg v. Don Wilson Builders*, 142 Cal.App.3d 883, 393, 191 Cal.Rptr. 92, 98 (1983). According to Fresno Oil, "liability for the hazardous substances on the land, like a defective condition on land, transferred to the purchaser Peabody Floway with the transfer of the property from Realty." Thus, Fresno Oil concludes that it had no duty to disclose concealed conditions known to it because Fresno Oil never owned the Railroad property and did not sell or transfer it to Peabody Floway, to whom Railroad property was transferred.

Fresno Oil's points on shifting responsibility for Railroad property defects further bolsters its position that it lacks CERCLA liability. Realty continued to own the Railroad property until Peabody Floway's acquisition.

As discussed above, in the absence of sufficient evidence, Fresno Oil is not subject to CERCLA liability as a corporate successor or otherwise, and DTSC's first and second CERCLA causes of action fail.

### **DTSC's California Health & Safety Code Section 25358.3 Claims**

DTSC pursues a fourth cause of action for injunctive relief under California Health & Safety Code section 25358.3 to require Fresno Oil to respond to and abate release of hazardous substances at the Railroad property. DTSC also pursues a fifth cause of action for injunctive relief under California Health & Safety Code § 25358.3 to require Fresno Oil to comply with DTSC remedial action orders. California Heath & Safety Code section 25358.3 provides in pertinent part:

(a) Whenever the [DTSC] director determines that there may be an imminent or

11

> substantial endangerment to the public health or welfare or to the environment, because of a release or a threatened release of a hazardous substance, the director may do any or all of the following:
>
> > (1) Order any responsible party or parties to take or pay for appropriate removal or remedial action necessary to protect the public health and safety and the environment.
> >
> > . . .
> >
> > (3) Request the Attorney General to secure such relief as may be necessary from the responsible party or parties to abate the danger or threat.

California Health & Safety Code section 25323.5(a)(1) defines a "responsible party" as persons described under 42 U.S.C. 9607(a). This federal statute defines a covered person to include a facility's owner or operator or "any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of."

Fresno Oil piggy backs its corporate successor CERCLA liability arguments to conclude that since Fresno Oil is not CFI's corporate successor, Fresno Oil is not a covered person under 42 U.S.C. § 9607(a) and in turn is not a responsible person under California Health & Safety Code section 25323.5(a)(1). As noted above, DTSC "acknowledges that the viability of all of its claims" hinges on a "legal conclusion" that Fresno Oil is CFI's corporate successor. Given the absence of sufficient evidence that Fresno Oil is subject to successor liability, DTSC's fourth and fifth causes of action under California Heath and Safety Code section 25358.3 fail in similar fashion to DTSC's CERCLA claims.

**DTSC's California Health & Safety Code Sections 25359 And 25359.2 Claims**

DTSC's sixth cause of action seeks treble damages under California Health & Safety Code § 25359 for Fresno Oil's failure to take removal or remedial actions to comply with DTSC's remedial action orders. California Health & Safety Code section 25359 provides in pertinent part:

> (a) Any person who is liable for a release, or threat of a release, of hazardous substances and who fails, without sufficient cause, as determined by the court, to properly provide a removal or remedial action upon order of the director or the court, pursuant to Section 25358.3, is liable to the department for damages equal to three times the amount of any costs incurred by the state account pursuant to this chapter as a result of the failure to take proper action.

DTSC's seventh cause of action seeks civil penalties under California Health & Safety Code § 25359.2 for Fresno Oil's failure to comply with DTSC's remedial action orders. California Health &

Safety Code section 25359.2 provides:

> Any person subject to a removal or remedial action order or other order issued pursuant to Section 25355.5 or 25358.3 who does not comply with that order without sufficient cause shall be subject to a civil penalty of not more than twenty-five thousand dollars ($25,000) for each day of noncompliance. Liability under this section may be imposed in a civil action or liability may be imposed administratively pursuant to Section 25359.3.

As it similarly responded to DTSC's CERCLA claims, Fresno Oil argues that it is neither a covered person under 42 U.S.C. § 9607(a) nor a responsible person under California Health & Safety Code section 25323.5(a)(1) to avoid treble damages under California Health & Safety section 25359 and penalties under California Health & Safety Code section 25359.2. Again, DTSC concedes that survival of its sixth and seventh causes of action requires a "legal conclusion" that Fresno Oil is CFI's corporate successor. As this Court has found insufficient evidence to support such conclusion, DTSC's sixth and seventh causes of action under California Heath and Safety Code sections 25359 and 25359.2 fail.

**DTSC's Nuisance Claim**

DTSC's third cause of action seeks injunctive relief under California Health & Safety Code section 58009 to abate a public nuisance of hazardous substances. California Health & Safety Code section 58009 provides in pertinent part:

> The department [DTSC] may commence and maintain all proper and necessary actions and proceedings for any or all of the following purposes:
>
> (a) To enforce its rules and regulations.
>
> (b) To enjoin and abate nuisances related to matters within its jurisdiction which are dangerous to health.

California Civil Code section 3483 provides: "Every successive owner of property who neglects to abate a continuing nuisance upon, or in the use of, such property, created by a former owner, is liable therefor in the same manner as the one who first created it."

Fresno Oil contends that it escapes nuisance liability because it neither owned nor possessed the Railroad property when hazardous substances were disposed of there during 1939-1964. Fresno Oil also argues that it was not a successive owner subject to nuisance liability because Realty retained ownership of the Railroad property until acquired by Peabody Floway.

Similar to its other causes of action, DTSC's third California Health & Safety Code section 58009 cause of action fails in the absence of sufficient evidence to find that Fresno Oil is subject to corporate successor or other liability.

## CONCLUSION AND ORDER

For the reasons discussed above, this Court:

1. GRANTS defendant California-Fresno Investment Company dba California-Fresno Oil Co. summary judgment; and

2. DIRECTS this Court's clerk to:

   A. Enter judgment in favor of defendant California-Fresno Investment Company dba California-Fresno Oil Co. and against plaintiff California Department of Toxic Substances Control; and

   B. Close this action.

IT IS SO ORDERED.

**Dated:   May 8, 2007**                         /s/ Lawrence J. O'Neill
                                                              UNITED STATES DISTRICT JUDGE